UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JULIE A. SU, Acting Secretary, United States Department of Labor,<br><br>      Plaintiff,<br><br>vs.<br><br>ALERUS FINANCIAL, N.A.; JAMES A. KISSLER; NORCO, INC.; and NORCO, INC. EMPLOYEE STOCK OWNERSHIP PLAN;<br><br>      Defendants. | Case No. 1:23-cv-00537-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are two motions to dismiss; one filed by Defendant James A. Kissler ("Kissler") (Dkt. 26) and one filed by Defendant Alerus Financial, N.A. ("Alerus") (Dkt. 29). With its Motion to Dismiss, Alerus also filed a Motion to Seal. Dkt. 27. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court GRANTS Kissler's Motion to Dismiss, DENIES Alerus's Motion to Dismiss, and DENIES Alerus's Motion to Seal.

## II. BACKGROUND

### A. Factual Background

Kissler is the former CEO and Chairman of the Board of Directors of Norco, Inc. ("Norco" or "the Company"), a privately held medical and industrial supply company incorporated in Idaho. In 2015, Kissler decided to create the Norco, Inc. Employee Stock Ownership Plan and Trust (the "ESOP")—a retirement plan meant to benefit Norco's employees. To fund the plan, Kissler would sell 35% of his shares in the Company to the ESOP.

In August 2015, Kissler retained Ambrose Capital Partners, LLC ("Ambrose") to serve as a financial advisor for the creation of the ESOP and to represent Kissler in negotiating the sale of his shares. In October 2015, Ambrose, in turn, contacted Alerus to act as trustee for the ESOP in the negotiations, deciding whether and on what terms to purchase Kissler's shares. This is common in ESOP transactions. *See, e.g., Fish v. Greatbanc Tr. Co.*, 2016 WL 5923448, at *60 (N.D. Ill. Sept. 1, 2016). Though it was not yet formally engaged, Alerus promptly hired Chartwell Financial Advisory, Inc. ("Chartwell") to advise on the fair market value of Kissler's shares, and McDermott Will & Emery ("McDermott") to act as its legal counsel for the transaction.

On November 10, 2015, Alerus's executive vice president approved Alerus's representation of the ESOP. Two weeks later, on November 24, 2015, Alerus was formally retained to serve as ESOP Trustee.

Ambrose made its first proposal to Alerus the following day, offering to convey Kissler's shares to the ESOP for a price of $160.7 million. On December 3, 2015, before it had responded to Ambrose's offer, Alerus received a draft valuation report (the "2015 Chartwell Evaluation") from Chartwell which placed the value of Kissler's shares between $129.9 and $150.9 million.[1] That same day, Alerus prepared a counteroffer of $135 million, which was delivered to Ambrose within a week. After further back-and-forth, the parties finally settled on a price of $141.58 million for the shares.

Having agreed on a price, Chartwell began preparing a formal report attesting to the fairness of the proposed transaction (the "Fairness Opinion"). Before issuing the Fairness Opinion, Chartwell shared a draft thereof with the parties involved in the transaction, including Ambrose, and incorporated recommended edits from the parties.

On December 23, 2015, Norco and the ESOP entered into a Stock Purchase Agreement whereby the ESOP formally agreed to purchase Kissler's shares. The ESOP took effect on January 1, 2015. The ESOP's governing document stated that it was to be governed by the ESOP Committee, which was to be appointed by Norco's Board of Directors. Until such an appointment was made, the ESOP was to be controlled by the Board itself—including Kissler, the Chairman of the Board. Additionally, the ESOP's

---

[1] The only prior Norco valuation of which the Court is aware is a valuation conducted by Willamette Management Associates ("Willamette") in 2012—more than three years prior to the ESOP transaction. Willamette determined the value of the entire company at that time to be $138.4 million. The Secretary contends that the discrepancy between Willamette's valuation and Chartwells' valuation shows that Chartwell's valuation was artificially inflated. Defendants counter that Norco grew significantly between the two valuations and that Chartwell's figures are accurate. The Court will discuss the significance of the Willamette valuation, to the extent there is any, at greater length below.

governing document gave Norco and its board sole authority to appoint and remove the ESOP's trustee.

**B. Procedural Background**

Plaintiff Julie A. Su (the "Secretary") is the acting Secretary of the United States Department of Labor. Under 29 U.S.C. § 1132(a)(2) and (5), the Secretary is authorized to enforce Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"). The parties do not dispute that the ESOP is an employee benefit plan as defined by 29 U.S.C. § 1002(3) and is subject to ERISA pursuant to 29 U.S.C. § 1003(a)(1).

In November 2023, the Secretary filed this suit, claiming that Alerus owed a fiduciary duty to the ESOP and that Alerus breached that duty by failing to adequately determine the value of Kissler's shares before purchasing them and by failing to negotiate the price of the shares in good faith. ("Count I"). Dkt. 1, at 17–19. She also claims that Alerus engaged in a transaction prohibited by ERISA ("Count II"). *Id.* at 20–21. Similarly, she claims that Kissler owed fiduciary duties to the ESOP and that he breached those duties by allowing the ESOP to engage in a transaction that Kissler knew or should have known was illegal ("Count III"). *Id.* at 21. She also claims that Kissler is liable as a co-fiduciary with Alerus ("Count IV"), or alternatively, as a knowing participant in Alerus's fiduciary breaches ("Count V"). *Id.* at 22–23.

In February 2024, Kissler filed a Motion to Dismiss the Secretary's three counts against him, arguing that none of the three state a valid claim and that, pursuant to Federal Rule of Civil Procedure 12(b)(6), all three should be dismissed. *See generally* Dkt. 26. On

the same day, Alerus filed a Motion to Dismiss the Secretary's two counts against it, asserting lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).[2] Dkt. 29. Alerus's Motion to Dismiss was accompanied with a Motion to Seal certain documents. Dkt. 27.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1) Lack of Subject Matter Jurisdiction

A federal court may not entertain an action over which it has no jurisdiction. A motion to dismiss under Rule 12(b)(1) challenges a court's subject-matter jurisdiction. Where a plaintiff lacks Article III standing to assert his or her claims, the reviewing court lacks subject-matter jurisdiction over the claims. *See, e.g.*, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Thus, a Motion to Dismiss for lack of standing is a challenge to subject-matter jurisdiction and is properly raised under Rule 12(b)(1).

The doctrine of standing is rooted in Article III's case or controversy requirement. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 438–39 (2017); U.S. Const. art. III, § 2, cl. 1. Federal courts have an obligation to verify that litigants before them have Article III standing. *Frank v. Gaos*, 586 U.S. 485, 492 (2019). And it is the burden of the party invoking federal jurisdiction to show he or she has met the standing requirements. *Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016). To make such a showing, the party must establish that: (1) he or she suffered some actual or threatened injury; (2) the injury is

---

[2] The Secretary also named Norco and the ESOP as defendants, but the parties have stipulated that neither needs to respond to the Complaint and that both remain in the action "solely for the purpose of ensuring complete relief among the parties." Dkt. 23; *see also* Dkt. 24 (approving the parties' stipulation).

fairly traceable to the challenged conduct; and (3) a favorable decision would redress the injury. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

"For purposes of ruling on a motion to dismiss for want of standing, [the court] must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya*, 658 F.3d at 1068 (cleaned up). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (cleaned up).

### B. Rule 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "failed to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1122.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. In other words, the claim for relief must be "plausible on its face." *Id.* at 570. A

plausible complaint is one that allows the reviewing court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### C. Motion to Seal

Courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). But this right is not absolute. *Id*. at 1178. A court may override the common law right of access if there are "sufficiently important countervailing interests." *San Jose Mercury News, Inc. v. U.S. Dist. Court—N. Dist. (San Jose)*, 187 F.3d 1096, 1102 (9th Cir. 1999).

Two separate standards govern motions to seal: a "compelling reasons" standard, which applies to documents attached to dispositive motions, and a "good cause" standard, which applies to documents attached to non-dispositive motions. *See Rosales v. Idaho Dep't of Health & Welfare*, 2020 WL 2841776, at *1 (D. Idaho June 1, 2020). *But see Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016) (holding that motions that are technically non-dispositive may still requires the party to meet the compelling reasons standard when the motion is more than tangentially related to the merits of the case).

A party facing the compelling reasons standard must assert more than conclusory statements about confidentiality to justify sealing. *See, e.g.*, *Kamakana*, 447 F.3d at 1183. Further, where possible, parties should tailor their sealing request to include only those

portions of the subject document containing sensitive information. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1139 (9th Cir. 2003); *Tan v. Konnektive Rewards, LLC*, 2023 WL 2336893, at *6 (S.D. Cal. Mar. 2, 2023).

## IV. ANALYSIS

### A. Kissler's Motion to Dismiss

In layman's terms, the Secretary contends that Kissler engaged in a self-serving transaction when he created the ESOP. She argues that, under Kissler's direction, Alerus evaluated the value of Norco hastily and sloppily. *See generally* Dkt. 1. This, the Secretary argues, was a breach by Kissler of his fiduciary duties. *Id.* Kissler counters that, to the extent there were any improprieties in the creation of the ESOP, he was not aware of them, nor should he have been. Dkt. 26.

Before determining whether Kissler may be held individually or jointly liable for breach of a fiduciary duty, the Court must first decide whether Kissler had any fiduciary role in the ESOP transaction. The Ninth Circuit "construe[s] ERISA fiduciary status liberally, consistent with ERISA's policies and objectives." *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009). One need not be a formal trustee before he may be considered a fiduciary; rather, "any individual who exercises any discretionary authority or discretionary control respecting management of [an ESOP] or exercises any authority or control respecting management or disposition of its assets," will qualify. 29 U.S.C. § 1002(21)(A)(i). Accordingly, the Ninth Circuit has "recognized that where members of an employer's board of directors have responsibility for the appointment and removal of ERISA trustees, those

directors are themselves subject to ERISA fiduciary duties, albeit only with respect to trustee selection and retention." *Couturier*, 572 F.3d at 1076.

These limited duties impose an obligation on the fiduciary to evaluate the performance of the appointed trustee at reasonable intervals "to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 2009 WL 3246994, at *10 (W.D. Wash. Oct. 5, 2009); 29 C.F.R. § 2509.75-8. A party alleging that a fiduciary failed to monitor a trustee "must allege facts relating to the periodic review process." *Wash. Mut.*, 2009 WL 3246994, at *11; *see also In re Calpine Corp.*, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005).

Here, the parties do not dispute that Kissler and the other members of Norco's Board of Directors were responsible for the appointment and removal of Alerus, the ESOP trustee. Accordingly, Kissler had a fiduciary duty to monitor Alerus's performance. *See Walsh v. Reliance Tr. Co.*, 2023 WL 1966921, *18 (D. Ariz. Feb. 13, 2023) (holding that a director may be held liable regardless of whether he acts on behalf of a corporation or in some individual discretionary role). However, like the plaintiffs in *Washington Mutual*, the Secretary has failed to allege that the procedures or processes Kissler followed were deficient in any way. 2009 WL 3246994, at *11. Instead, she asks the Court to work backwards, inferring deficient process from what she asserts is a deficient price. Dkt. 41, at 17–18. But this is the same logic rejected by the Western District of Washington in *Washington Mutual*, and the Court sees fit to reject it here. Kissler's Motion to Dismiss is GRANTED as to Count

III. In the Ninth Circuit, a claim should be dismissed without leave to amend only if the claim cannot be saved by amendment. *See, e.g.*, *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). Theoretically, the Secretary could amend Count III to include facts related to Kissler's review processes sufficient to support a reasonable inference that Kissler breached his fiduciary duties. Thus, as will be outlined at the end of the order, the Court will grant the Secretary a brief window to amend Count III.

In Count IV, the Secretary asserts that Kissler is liable for Alerus's alleged breaches as a co-fiduciary. Dkt. 1, at 22–23. Pursuant to 29 U.S.C. § 1105, a fiduciary may be liable for the breach of another fiduciary:

> (1) if he participates knowingly in . . . an act or omission of such other fiduciary, knowing such act or omission is a breach;

> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a)(1–3).

The Secretary claims that Kissler knew: (1) Alerus's investigation of the transaction was rushed; (2) Alerus failed to investigate the discrepancy between the Willamette valuation and the Chartwell valuation; (3) Alerus failed to "address multiple procedural irregularities that compromised the reliability of Chartwell's valuation process"; (4) Alerus failed to

negotiate the purchase price in good faith; and (5) Alerus caused the ESOP to overpay for the shares. Dkt. 1, at 22. Accordingly, she asserts that Kissler "participated knowingly" in Alerus's breaches and is liable as a co-fiduciary. *Id.*

As for the first assertion, the Court notes that ESOP timelines are heavily context dependent. *See* Gordon Bing, *Due Diligence Techniques and Analysis: Critical Questions for Business Decisions*, 4, 7 (1996) (stating that "[n]o precise answer exists [for what] constitutes adequate due diligence" and that "[t]he circumstances controlling time for completion [of due diligence] can vary widely with each situation"). The same timeline may be inappropriately abbreviated in one case, but more than sufficient in another. Thus, the Court rejects the Secretary's claim that "six weeks is an objectively truncated timeline[.]" Dkt. 41, at 18. Further, even assuming that the six-week timeline here was problematic, the Secretary has not plausibly alleged that Kissler himself should have known as much. Nothing in the Complaint indicates that Kissler is familiar with ESOP creation, or the timelines associated therewith. That is why he hired Ambrose and Alerus. He may be "an experienced businessman," *Id.* at 19, but that alone is not enough for the Court to reasonably infer that Kissler knew the timeline was a red flag.

Moving to the second assertion—that Kissler failed to investigate differing valuations—courts in this circuit have made clear that a business is not a "static asset." *Gamino v. KPC Healthcare Holdings, Inc.*, 2022 WL 4596576 (C.D. Cal. Aug. 15, 2022, *appeal dismissed sub nom Gamino v. SPCP Grp., LLC*, 2023 WL 4539851 (9th Cir, June 8, 2023). Because the value of a company changes over time, a given valuation loses relevance

as time passes. In a prior Fifth Circuit case, the Secretary of Labor acknowledged as much, arguing that a fiduciary's reliance on a thirteen-month-old valuation was inappropriate. *Donovan v. Cunningham*, 716 F.2d 1455, 1469 (5th Cir. 1983). Thus, for the Secretary to argue that Kissler (who is not a valuation professional) should have known he needed to halt an ESOP transaction based on four-year-old valuation figures (that were likely no longer accurate) is somewhat disingenuous.

The Secretary's final three assertions also fail because the Complaint does not contain sufficient allegations for the Court to reasonably infer that Kissler had knowledge of any procedural irregularities that may have been present in the 2015 Chartwell valuation, that Kissler knew the ESOP transaction was not negotiated in good faith, or that Kissler knew Alerus had overpaid for his shares. The Court will discuss Alerus's liability in greater detail below. But Claim IV relies heavily on the idea that because Kissler was the CEO and a board member of Norco, he is responsible for any misdeeds by the parties involved in the ESOP transaction. This position is not supported by ERISA or relevant caselaw. To allow Claim IV to proceed, the Court would need more facts supporting a reasonable inference that Kissler had knowledge of fiduciary breaches by Alerus. His involvement in Norco leadership is not enough. Kissler's Motion to Dismiss is GRANTED as to Count IV. The Secretary will be given leave to amend.

Count V relies on the same, faulty foundation as Count IV, and the Court's reasons for dismissing Count IV apply with equal force to Count V. To be liable as a knowing participant in a fiduciary breach, the defendant must have had "actual or constructive

knowledge of the circumstances that rendered the transaction unlawful." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000). Even assuming Alerus breached its fiduciary duties—again, more on that later—the Court cannot reasonably infer from the Secretary's allegations that Kissler knew or should have known of Alerus's breach. Thus, Kissler's Motion to Dismiss is GRANTED as to Count V. The Secretary will be given leave to amend.

In sum, the Secretary has not alleged any deficiencies with the procedures related to Kissler's duty to monitor, nor has she alleged facts sufficient for the Court to reasonably infer that Kissler knew of any breaches by Alerus. Accordingly, Kissler's Motion to Dismiss Counts III–V is GRANTED in full. The Secretary will be given leave to amend the Complaint as outlined at the end of this Order.

**B. Alerus's Motion to Dismiss**

The Secretary levies two counts against Alerus. In Count I, the Secretary alleges that Alerus breached its fiduciary duties. An ERISA fiduciary must fulfil its duties with respect to the plan "solely in the interest of the participants and beneficiaries[.]". 29 U.S.C. § 1104(a)(1). The fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use" in similar circumstances. *Id.* at 1104(a)(1)(B).

The Secretary claims that Alerus fell short of this standard by failing to thoroughly investigate the fair market value of Kissler's shares and by failing to negotiate the price of the shares in good faith. Dkt. 1, at 17–18. In support of this position, the Secretary points

to seven "red flags" in Chartwell's valuation process that should have alerted Alerus that Chartwell's valuation of Kissler's shares was inflated. *Id.* at 10–14. In response, Alerus claims that each of the supposed red flags is, in truth, a red herring, chalking up the Secretary's concerns to simple differences in professional judgment regarding "highly technical matters." Dkt. 29-1, at 16. Alerus contends that these red flags alone are not sufficient to create a reasonable inference that it breached its fiduciary duties. *See generally*, *id.*

The Court has reviewed the Secretary's red flags, and while not all of them give the Court pause, enough of them do for the Court to reasonably infer that Chartwell's valuation was inappropriately inflated and that Alerus breached its fiduciary duties by failing to investigate and remedy such inflation and by negotiating on the basis of Chartwell's figures. This is because the Court must take the allegations in the Complaint as true at this stage of the proceedings. Alerus may or may not rebut this inference as the case proceeds. But for now, the Secretary's allegations are sufficient for the case to move forward.

For example, the Secretary's first red flag is that Chartwell relied on unreasonably high projections of Norco's future cash flows when determining the value of Kissler's shares. Dkt. 1, at 11. Specifically, Chartwell utilized the discounted cash flow, or "DCF" method in its efforts to determine the value of Kissler's shares. "The theory behind the DCF method is that the current value of a company is essentially equal to the amount of cash it will generate in the future, discounted to present value." *Steiner Corp. v. Benninghoff*, 5 F. Supp. 2d, 1117, 1130 (D. Nev. 1998). The parties agree that the DCF

method relies on a projection of future income for a discrete, near-term period (here, five years) and an estimate of long-term cash flows after that period, called the terminal period. The present value of a company increases as these projected cash flows increase.

Here, Chartwell projected that Norco would grow at a rate of 5.2% in the five years following the ESOP transaction. Then, for reasons not clear to the Secretary or the Court, Chartwell projected that Norco's rate of growth would accelerate to 6.8%—a rate at which it would maintain into perpetuity. This rate for the terminal period exceeds the rate for both the near-term period and the expected growth rate of the United States' GDP. Alerus acknowledges as much, an even acknowledges that "it is uncommon that the long-term growth rate of a mature company such as Norco will match or exceed nominal GDP[.]" Dkt. 29-1, at 19. But it fails to elaborate on why a departure from the norm is appropriate here. The Court recognizes, as Alerus asserts, that some sectors of the economy may grow faster than others. *Id.* But Alerus stops short of explaining why Norco, a medical and industrial supply company, can reasonably be expected to outpace the U.S. economy as a whole. Even if, as Alerus represents, adherence to the projected rate of GDP is "not the ironclad law," it remains a good rule of thumb—a rule that Alerus cast aside, seemingly without explanation. *Id.*

Turning to the second red flag, the Secretary claims that Chartwell relied on unreasonable assumptions about Norco's capital structure in valuing Kissler's shares. Dkt. 1, at 11–12. As part of a DCF analysis, an appraiser must calculate the subject company's weighted average cost of capital ("WACC"). WACC calculations, in turn, require the

appraiser to, among other things, ascribe a weight to the company's cost of equity and its cost of debt, based on the company's capital structure. For our purposes, it is enough to know that in Norco's case, placing more weight on Norco's cost of debt, as compared to equity, would result in a lower WACC and a higher DCF projection.

In Chartwell's final valuation, the Secretary alleges that Chartwell assigned a 45% weight to Norco's cost of debt, even though in recent years, debt made up an average of 24.5% of Norco's capital structure, and companies similar to Norco averaged 20% debt. *Id.* at 12.

Alerus admits that Chartwell assigned Norco's debt a 45% weight, but states that it is common practice for appraisers to make their appraisals based on a company's *optimal* cash structure, as opposed to its actual capital structure. Dkt. 29-1, at 20. Alerus elaborates that to determine the company's optimal cash structure, the appraiser examines "company-specific data, including the company's past and current leverage ratios and its capacity to support more debt, along with market-based data, including comparable public companies' debt levels and general industry statistics." *Id.* But if optimal structure relies on company specific data and data from similar public companies, then it makes little sense for the weight assigned to Norco's debt to be higher than *any* single year in the company's recent past, and higher than the median range of *any* comparable public company in the five years before the ESOP transaction. *Id.* at 20–21. This fact certainly does not foreclose Alerus's defense, but along with the first red flag, it supports a reasonable inference that Alerus is liable under Count I and that dismissal is inappropriate.

Having determined that the first two red flags are sufficient to create a reasonable inference in support of Count I, the Court will forego an in-depth analysis of the balance of the red flags. In an effort to clear up some apparent confusion, however, the Court will spend just a moment on the third red flag. The Secretary's third red flag is that Chartwell removed $21 million in capital expenditures without adding a corresponding amount to Norco's debt. Dkt. 1, at 12. In response, Alerus spends a notable amount of time arguing that the Secretary has not alleged this red flag caused the plan to suffer an injury in fact. Dkt. 29-1, at 23. Accordingly, Alerus argues, the Secretary lacks standing to "bring this claim." *Id.*

The problem, however, is that the third red flag is not a "claim." Rather, it is one of the several factual bases supporting Count I—the Secretary's claim that Alerus failed to diligently investigate the fair market value of Kissler's shares and failed to negotiate in good faith. As to *that* claim, the Secretary has clearly alleged that Alerus's failures caused the plan to overpay for Kissler's shares. A favorable decision in this case would remedy the overpayment. Thus, the Secretary has standing to bring Count I. Had the Secretary brought another claim relying solely on the third red flag, then she would need to show injury, causation, and redressability as to Chartwell's removal of $21 million from Norco's capital expenditures. But she has not, and so she need not.

For the reasons outlined above, the Court finds that, as to Count I, the Secretary has stated a plausible claim for relief. It turns now to Count II.

In Count II, the Secretary alleges that Alerus allowed the ESOP to engage in a prohibited transaction. Under ERISA, "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—(A) sale or exchange, or leasing, of any property between the plan and a party in interest[] . . . [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1).

On its face, § 1106(a)(1) "significantly hamper[s] the implementation of ESOPs, particularly by small companies[.]" *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 618 (2d Cir. 2006) (cleaned up). Recognizing as much, "Congress enacted in [29 U.S.C. § 1108] a conditional exemption from the prohibited transaction rules for acquisition of employer securities by ESOPs and certain other plans." *Id.* (cleaned up). This exemption "permits the sale of employer stock by a party in interest to an ESOP if the purchase is made for adequate consideration." *Id.* (cleaned up). In transactions involving non-public companies—like Norco—adequate consideration is defined as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." 29 U.S.C. § 1002(18)(B).

Importantly, "an ERISA plaintiff need not plead the absence of exemption to prohibited transactions. It is the defendant who bears the burden of proving" the applicability of an exemption like adequate consideration. *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 676 (7th Cir. 2016); *see also Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir.

2015), *rev'd on other grounds* 577 U.S. 308 (2016) ("[T]he existence of an exemption under § 1108(e) is an affirmative defense[.]").

Alerus argues that Count II should be dismissed because the Complaint makes clear on its face that Alerus tendered adequate consideration in exchange for Kissler's shares. Dkt. 29-1, at 12; Dkt. 43, at 3. It relies on *Zavala v. Kruse-W. Inc.*, wherein the Eastern District of California stated that a court may "dismiss a cause of action under § 1106 where the affirmative defense of adequate consideration is clearly indicated and appears on the face of the pleading." 398 F. Supp. 3d 731, 742–43 (E.D. Cal. 2019) (cleaned up).[3] But here, nothing in the Complaint suggests that the adequate consideration defense is applicable. Quite the contrary, as discussed above, the Complaint creates a reasonable inference that the price the ESOP paid for Kissler's shares was inflated beyond adequacy. Thus, *Zavala's* dismissal provision is inapplicable here. Alerus may raise the adequate consideration defense in subsequent filings. But its invocation of the defense at this point is premature.

In sum, the Secretary's red flags create a reasonable inference that Alerus is liable under Count I. As for Count II, the parties acknowledge that the ESOP transaction was

---

[3] *Zavala*, goes on to state: "Here, however, no allegations appear within the complaint affirmatively demonstrating that defendant GreatBanc paid adequate consideration. To the contrary, the complaint alleges that 'the ESOP paid more than fair market value,' and that the transaction price 'was based on unrealistic management projections and did not adequately reflect the future revenue and earnings given the recurring monensin contamination in Western Milling's animal feed.' Whether these allegations are true will, presumably, be resolved during this litigation. At present, however, the court finds nothing on the face of the complaint establishing that the consideration paid in the transaction at issue was adequate. Defendants' motion to dismiss the first cause of action as to defendant GreatBanc will therefore be denied." *Zavala,* 398 F. Supp. 3d at 743.

prohibited under 29 U.S.C. § 1106(a)(1). Alerus may raise the affirmative defense of adequate consideration, but that defense is not clearly indicated on the face of the Complaint. Accordingly, Count II should also move forward. Alerus's Motion to Dismiss is DENIED.

### C. Alerus's Motion to Seal

In a one-page motion, Alerus asks the Court to seal in their entirety several documents on which it relies to support its Motion to Dismiss. Dkt. 27-1, at 2. Because these documents support a dispositive motion, Alerus must show compelling reasons to justify sealing them. *Ctr. For Auto Safety*, 809 F.3d at 1101. Alerus notes that Courts often seal documents containing confidential business information. *Id.* It then states summarily that the documents it seeks to seal "contain such confidential business information, particularly sensitive information used for valuation." *Id.*

This succinct assertion of confidentiality falls well short of the specificity required to meet the compelling reasons standard. *See Kamakana*, 447 F.3d at 1183. This alone is sufficient reason to deny Alerus's Motion. Denial is further supported by the fact that Alerus has made no effort to tailor its Motion to Seal. *See Tan*, 2023 WL 2336893, at *6. The public has a right to inspect these documents, and Alerus has not shown that "sufficiently important countervailing interests," outweigh that right here. *San Jose Mercury News, Inc.*, 187 F.3d at 1102. Accordingly, Alerus's Motion to Seal is DENIED.

### V. CONCLUSION

The Secretary has not alleged facts sufficient to support a reasonable inference that Kissler breached his fiduciary duties or that Kissler should be held liable as a co-fiduciary or a knowing participant. Thus, Kissler's Motion to Dismiss Counts III–V is GRANTED.

The Secretary has alleged facts sufficient to support a reasonable inference that Alerus breached its fiduciary duties. She has also sufficiently alleged that Alerus engaged in a transaction prohibited under ERISA. Accordingly, Alerus's Motion to Dismiss Counts I–II is DENIED.

Finally, because Alerus's Motion to Seal relies almost entirely on a conclusory assertion of confidentiality, the Motion is also DENIED.

## VI. ORDER

1. Kissler's Motion to Dismiss (Dkt. 26) is GRANTED.

    a. The Secretary must file an Amended Complaint within thirty (30) days of issuance of this Order. Otherwise, Counts III–V will remain dismissed.

2. Alerus's Motion to Dismiss (Dkt. 29) is DENIED.

3. Alerus's Motion to Seal (Dkt. 27) is DENIED.

    a. The Clerk of Court shall unseal Dkt. 28.

DATED: November 4, 2024

David C. Nye
Chief U.S. District Court Judge