Dana M. Florkowski, DC Bar No. 1659708, VA Bar No. 93499
Florkowski.Dana.M@dol.gov
Alyssa C. George, DC Bar No. 187659
George.Alyssa.C@dol.gov
Rachel A. Uemoto, CA Bar No. 335405, HI Bar No. 11404
Uemoto.Rachel@dol.gov
Office of the Solicitor
Plan Benefits Security Division
U.S. Department of Labor
P.O. Box 1914
Washington, DC 20013
Tel: (202) 693-5600
Fax: (202) 693-5610

Attorneys for Plaintiff Julie A. Su,
Acting Secretary of the United States Department of Labor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| JULIE A. SU, Acting Secretary, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>ALERUS FINANCIAL, N.A., JAMES A. KISSLER, NORCO, INC., and NORCO, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Defendants. | Case No.: 1:23-cv-00537<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR RECONSIDERATION** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................... ii

LEGAL STANDARD............................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

    I.    The Complaint States a Failure-to-Monitor Claim by Alleging that Kissler Knew or Should Have Known of Alerus's Breach and Failed to Take Remedial Action...................... 3

    II.    The Complaint's Allegations Support an Inference that Kissler Knew or Should Have Known of Alerus's Breaches................................................................................................ 6

CONCLUSION ....................................................................................................................... 10

i

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases:**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................... 6, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................... 6

*Chea v. Lite Star Esop Comm.*,
   No. 1:23-CV-00647-JLT-SAB, 2024 WL 280771 (E.D. Cal. Jan. 25, 2024)................... 4 n.2, 5

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ......................................................................................... 1

*Gamino v. KPC Healthcare Holdings, Inc.*,
   No. 5:20-CV-01126-SB-SHK, 2021 WL 162643 (C.D. Cal. Jan. 15, 2021) ................... 4 n.2, 9

*Henry v. Frontier Indus., Inc.*,
   863 F.2d 886, 1988 WL 132577 (9th Cir. 1988)..................................................... 2, 4

*Hurtado v. Rainbow Disposal Co.*,
   No. 8:17-CV-01605-JLS-DFM, 2018 WL 3372752 (C.D. Cal. July 9, 2018)...................... 5 n.2

*In re Syncor ERISA Litig.*,
   351 F. Supp. 2d 970 (C.D. Cal. 2004)............................................................................. 5

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
   2009 WL 3246994 (W.D. Wash. Oct. 5, 2009) ...................................................... 3, 4

*In re Xerox Corp. Erisa Litig.*,
   483 F. Supp. 2d 206 (D. Conn. 2007) ........................................................................... 5

*Johnson v. Parker-Hannifin Corp.*,
   No. 24-3014, 2024 WL 4834717 (6th Cir. Nov. 20, 2024) ........................................ 3

*Pizzella v. Reliance Tr. Co.*,
   No. CV-19-03178-PHX-JJT, 2020 WL 805527 (D. Ariz. Feb. 18, 2020) ....................... 5 n.2, 7

*Shoshone-Bannock Tribes of Fort Hall Rsrv. v. United States*,
   No. 4:18-CV-00285-DCN, 2023 WL 2456403 (D. Idaho Mar. 10, 2023)................................. 1

**Federal Cases (continued):**

*Solis v. Couturier*,
   No. 2:08-CV-02732-RRB-GGH, 2009 WL 1748724 (E.D. Cal. June 19, 2009) ......... 2, 4, 5 n.2

*Steinle v. City and Cty. of S.F.*,
   919 F.3d 1154 (9th Cir. 2019) ............................................................................... 6

*Weber v. Dep't of Veterans Affairs*,
   521 F.3d 1061 (9th Cir. 2008) .............................................................................. 6

**Federal Statutes:**

29 U.S.C. §§ 1104(a)(1)(A), (B), and (D)................................................................. 1, 7

29 U.S.C. §§ 1105(a)(1)–(3) ..................................................................................... 1

**Rules:**

Federal Rule of Civil Procedure 54(b)........................................................................ 1

Federal Rule of Civil Procedure 59(e) ........................................................................ 1

Plaintiff Julie A. Su, Acting Secretary of the United States Department of Labor (the "Secretary"), hereby respectfully moves the Court for reconsideration of the Court's Order dismissing Counts III–V of the Secretary's Complaint against Defendant James Kissler ("Kissler"). (ECF No. 48). Though the Court granted the Secretary leave to amend these claims, the Secretary does not anticipate doing so and maintains that the existing Complaint adequately states claims for relief under the applicable legal standards.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), the Court retains the inherent authority "to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Shoshone-Bannock Tribes of Fort Hall Rsrv. v. United States*, No. 4:18-CV-00285-DCN, 2023 WL 2456403, at *1 (D. Idaho Mar. 10, 2023) (quoting *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)). Courts often apply the same standards as those used for motions to reconsider under Federal Rule of Civil Procedure 59(e); accordingly, the Court may grant a motion to reconsider in three circumstances: "(1) when there is newly discovered evidence, (2) when the court commits clear error or issues an order that is manifestly unjust, or (3) when there is an intervening change in the law." *Id.*

## ARGUMENT

The Secretary's Complaint asserts three claims against Kissler: (1) that Kissler, who appointed Alerus as ESOP trustee, violated his fiduciary duties of loyalty, prudence, and adherence to plan documents by failing to properly monitor Alerus in the performance of its duties, in violation of 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D); (2) that Kissler is liable as a co-fiduciary to Alerus for knowingly participating in, enabling, and failing to remedy Alerus's breaches, in violation of 29 U.S.C. §§ 1105(a)(1)–(3); and (3) in the alternative, that Kissler is

1

liable as a non-fiduciary knowing participant in Alerus's breaches.[1] As set out below, the

Complaint contains sufficient factual allegations, taken as true and construed in the light most

favorable to the Secretary, to state plausible claims against Kissler under each count. In holding

otherwise, the Court committed clear error.

First, the Court applied an incorrect pleading standard for a failure-to-monitor claim.

Under the well-established standard in this circuit, a plaintiff may state a failure-to-monitor claim

by pleading that the appointing fiduciary "'knew or should have known' about the trustee's

misconduct and failed to take steps to remedy the situation." *Solis v. Couturier*, No. 2:08-CV-

02732-RRB-GGH, 2009 WL 1748724, at *7 (E.D. Cal. June 19, 2009) (quoting *Henry v.

Frontier Indus., Inc.*, 863 F.2d 886, 1988 WL 132577, at *4 (9th Cir. 1988) (unpublished)). That

is exactly what the Complaint alleges. Indeed, it contains allegations that were specifically found

lacking in the principal case relied on by the Court to justify dismissal: namely, the Complaint

here identifies both the appointee whose conduct was inadequate (i.e., Alerus), and specific

conduct by Alerus that Kissler knew or should have known about and that should have prompted

him to take appropriate remedial action. The failure-to-monitor claim should not be dismissed.

Second, on the co-fiduciary and knowing participation claims, the Court found that the

Complaint lacked sufficient facts to support a reasonable inference that Kissler knew or should

have known of any breaches by Alerus. In reaching this conclusion, the Court either failed to

address or misconstrued numerous factual allegations already present in the Complaint—

allegations of the kind that numerous courts have deemed sufficient to state co-fiduciary liability

---

[1] The relevant factual background in this case is set out in the Plaintiff's Response to Defendant James A. Kissler's Motion to Dismiss Counts III–V of the Complaint (ECF No. 41) and in the Court's Order. Capitalized terms not defined in this Memorandum have the same meaning as in those documents.

and knowing participation claims. Those allegations support the reasonable inference that Kissler knew or should have known that Alerus was breaching its fiduciary duties and causing the ESOP to enter into a prohibited transaction. Accordingly, the Secretary respectfully requests that the Court reconsider its dismissal of Counts III–V of the Complaint.

I.    **The Complaint States a Failure-to-Monitor Claim by Alleging that Kissler Knew or Should Have Known of Alerus's Breach and Failed to Take Remedial Action**

The Court erred in dismissing Count III because it misapplied the standard for pleading a failure-to-monitor claim. Despite finding that Kissler was "responsible for the appointment and removal of Alerus, the ESOP trustee" and therefore "had a fiduciary duty to monitor Alerus's performance," Order at 9 (Dkt. No. 48), the Court found that the Secretary failed to state a claim for breach of that duty. Focusing on the obligation of an appointing fiduciary to "evaluate the performance of the appointed trustee at reasonable intervals," the Court concluded that the Secretary "failed to allege that the procedures or processes Kissler followed were deficient in any way." *Id*. The Court characterized the Secretary's claim as instead asking the Court to "work backwards, inferring deficient process from what she asserts is a deficient price." *Id.* Based on that characterization, the Court analogized the Secretary's claim to the one dismissed in *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.* ("*WaMu*"), where the plaintiffs "merely argue[d] this duty must have been breached by the precipitous fall of WaMu's stock price." No. 2:08-MD-1919 MJP, 2009 WL 3246994, at \*11 (W.D. Wash. Oct. 5, 2009).

But the Complaint does not ask the Court to infer a deficient process from a "deficient price." Order at 9. Rather (as elaborated more fully in section II below), the Complaint alleges that Kissler knew or should have known of specific misconduct by Alerus during the course of the Transaction, yet did nothing to intervene, which is direct evidence of Kissler's deficient monitoring process (and at the very least supports a reasonable inference of one). *See Johnson v.*

3

*Parker-Hannifin Corp.*, No. 24-3014, 2024 WL 4834717, at *9 (6th Cir. Nov. 20, 2024) ("Even when the alleged facts do not directly address[ ] the process by which the Plan was managed, a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed.") (quotations omitted). Specifically, the Complaint alleges that Kissler knew or should have known that Alerus "rushed its investigation into the ESOP Transaction" and "failed to . . . investigate the large discrepancy between the 2012 Willamette Valuation and the Chartwell Valuation Report." Compl. ¶ 99 (Dkt. No. 1); *see id.* ¶¶ 75–78. Yet, the Complaint alleges, Kissler took no action whatsoever, such as by replacing Alerus, declining to participate in the Transaction, or taking other appropriate remedial action. *Id.* ¶ 95. The Secretary's Complaint is thus far afield from the one the court deemed insufficient in *WaMu*, which, unlike the Complaint here, was premised solely on the declining stock price and did not "make any claims about individuals whose performance was inadequate and who should have been removed." *WaMu*, 2009 WL 3246994, at *11 (internal quotations omitted).

Because the Secretary's duty-to-monitor claim is premised on Kissler's knowledge of Alerus's misconduct and failure to act on it, it is on par with monitoring claims that courts within this circuit have upheld against motions to dismiss. As those courts have explained, "[a] fiduciary with a duty to monitor a trustee is liable for the trustee's fiduciary breach if he 'knew or should have known' about the trustee's misconduct and failed to take steps to remedy the situation." *Couturier*, 2009 WL 1748724, at *7 (quoting *Henry*, 1988 WL 132577 at *4). That is why courts within this circuit have consistently held that, to state a claim for breach of the duty monitor, a plaintiff need only allege those two elements: that the monitoring fiduciary knew or should have

4

known of trustee misconduct and that the monitoring fiduciary failed to do anything about it.[2] To the extent the Court required more than that at this stage, it committed clear error. *See Chea v. Lite Star Esop Comm.*, No. 1:23-CV-00647-JLT-SAB, 2024 WL 280771, at \*50 (E.D. Cal. Jan. 25, 2024), *report and recommendation adopted in part, rejected in part,* No. 1:23-CV-00647-JLT-SAB, 2024 WL 4357002 (E.D. Cal. Sept. 30, 2024) ("'[T]he scope of the duty to monitor will require a factually intense analysis[,]' and thus, 'many courts have declined to dismiss a duty to monitor claim on a motion to dismiss.'") (quoting *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 986 (C.D. Cal. 2004)); *see also, e.g.*, *In re Xerox Corp. Erisa Litig.*, 483 F. Supp. 2d 206, 215 (D. Conn. 2007) ("because the appropriate ERISA mandated monitoring procedures vary

---

[2] *See, e.g.*, *Chea v. Lite Star Esop Comm.*, No. 1:23-CV-00647-JLT-SAB, 2024 WL 280771, at \*46 (E.D. Cal. Jan. 25, 2024), *report and recommendation adopted in part, rejected in part,* No. 1:23-CV-00647-JLT-SAB, 2024 WL 4357002 (E.D. Cal. Sept. 30, 2024) (allegations that appointing fiduciaries "had knowledge that the ESOP Transaction was based upon inaccurate and incomplete projections" and did not take "steps to remove the Trustee or remedy his breaches" were "sufficient allegations as to the duty to monitor"); *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-SHK, 2021 WL 162643, at \*4 (C.D. Cal. Jan. 15, 2021) ("Defendant KPC Healthcare had knowledge . . . that the trustee had undergone an unlawful transaction for more than fair market value" and "despite this knowledge, Defendant KPC Healthcare took no steps to protect ESOP participants or remove the trustee. . . . These allegations are sufficient to state a claim for breach of the failure to monitor by Defendant KPC Healthcare."); *Pizzella v. Reliance Tr. Co.*, No. CV-19-03178-PHX-JJT, 2020 WL 805527, at \*3 (D. Ariz. Feb. 18, 2020) ("These inferences drawn from the allegations in the Complaint would establish the actual knowledge of circumstances demonstrating breach by the trustee. The allegations are thus adequate to state a claim for breach of a fiduciary's duty to monitor."); *Hurtado v. Rainbow Disposal Co.*, No. 8:17-CV-01605-JLS-DFM, 2018 WL 3372752, at \*14 (C.D. Cal. July 9, 2018) (denying motion to dismiss monitoring claims based on allegations that appointing fiduciaries "knew that GreatBanc was aware of the breaches of fiduciary duty that took place prior to the October 2014 transaction and yet failed to take corrective action" and "knew that GreatBanc was aware that the trust assets were improperly invested and that the Prior ESOP Committee Defendants had engaged in prohibited transactions, yet failed to take corrective action"); *Couturier*, 2009 WL 1748724, at \*7 ("Because Plaintiff has alleged that Johanson knew at all times of Eddy's conflict of interest and fiduciary breach and participated in the breach, dismissal of the cause of action for duty to monitor is not warranted.").

according to the nature of the Plan at issue and other facts and circumstances, an analysis of the precise contours of the defendants' duty to monitor at this stage is premature").

Because the Complaint alleges Kissler knew or should have known of Alerus's misconduct and failed to act, the Secretary stated a failure-to-monitor claim.

## II.    The Complaint's Allegations Support an Inference that Kissler Knew or Should Have Known of Alerus's Breaches

The Court also erred in dismissing Counts IV and V because the Complaint already contains the additional facts the Court found would be necessary to infer that Kissler had knowledge of Alerus's fiduciary breaches. The same allegations also support Kissler's knowledge as to the failure-to-monitor claim. At the pleadings stage, "[a] complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 556. The reviewing court must "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Steinle v. City and Cty. of S.F.*, 919 F.3d 1154, 1160 (9th Cir. 2019). Applying these standards, the Complaint states plausible claims for relief against Kissler under all three counts. The Court erred in finding the Complaint lacking while overlooking key factual allegations that support reasonable inferences of liability.

First, the Court failed to fully address the allegations regarding the Transaction timeline. It is certainly true that the length of an adequate due diligence process will vary based on the circumstances of each transaction. *See* Order at 11. But the Complaint alleges not only that

6

Alerus approved the Transaction in a short timeframe, but also that it was Kissler's own tax-savings strategy, and not Alerus's due diligence process, that drove the Transaction to close in December 2015. Compl. ¶ 75. In other words, the allegation here is that Alerus was not free to decide how much time it would need to complete an adequate due diligence process based on the circumstances of the proposed transaction. Instead, Kissler's representative set the timeline based on what was best for Kissler, before Alerus even signed on as trustee.[3] Id. ¶¶ 74–75. Further, the Complaint specifically alleges that Kissler knew that his tax-savings strategy determined the deadline for Alerus to investigate, negotiate, and approve the Transaction, and that he and his representatives knew of signs that the process was rushed. Id. ¶¶ 75, 77. Thus, even assuming Kissler could not have been expected to know that six weeks was an unusually compressed time period for a buyer to investigate, negotiate, and paper a $140 million stock purchase—a doubtful proposition given Kissler's decades-long experience in business and the fact that ERISA holds fiduciaries to the standard of a "prudent man acting in a like capacity and familiar with such matters," 29 U.S.C. § 1144(a)(1)(B)—he was still on notice that his advisers proposed an artificial timeline driven by his personal tax situation, and that Alerus met it. These allegations support the inference that Kissler knew or should have known of a rushed and compromised process by Alerus. See Reliance Tr. Co., 2020 WL 805527, at *2 (in refusing to dismiss a duty-to-monitor claim, explaining that "the Court can infer from the allegations that the transaction was rushed and completed according to the Individual Defendants' dictated timeline, that there was inadequate review and scrutiny of the transaction by the Trustee and its agent appraiser").

---

[3] This is also why it is immaterial that Kissler "hired Ambrose and Alerus" to implement the Transaction. Order at 11. Kissler retained the "fiduciary duty to monitor Alerus's performance." Order at 9. He could not outsource this duty to Ambrose, nor could he intentionally shut his eyes to the constraints placed upon Alerus's ability to conduct an adequate due diligence process.

Second, the Court misconstrued the allegation regarding Kissler's failure to investigate the disparity between the Transaction price and the 2012 Willamette Valuation. The Secretary readily acknowledges that "the value of a company changes over time" and does not contend that the parties should have set the Transaction price in 2015 based solely on the 2012 Willamette Valuation—a position that would indeed implicate the concerns noted in the Order about relying on outdated valuations. *See* Order at 11–12. But that does not mean that recent prior valuations are completely irrelevant and can play no role whatsoever in a subsequent investigation into the fair market value of privately held stock. If a current valuation departs substantially and inexplicably from a recent prior one by a reputable valuation firm, that should at least be reason to question the current valuation and evaluate the reasons for the disparity; while that evaluation could well reveal valid reasons for the increase, it also could illuminate significant problems.

In that spirit, the Complaint simply alleges that the drastic disparity between the valuation implied by the Transaction price and the 2012 Willamette Valuation should have been cause for alarm—and further investigation—given that it far exceeded the increase in Norco's intrinsic growth since the Willamette valuation. Compl. ¶¶ 56–57.[4] While Norco's intervening growth indicated a certain level of increase in Norco's value since the 2012 Willamette Valuation, it did not come close to explaining the astronomical leap reflected in the Transaction price—a leap that, at the very least, demanded further investigation. And Kissler was both aware of (and previously relied upon) the 2012 Willamette Valuation and knew that Norco's performance in the intervening years did not explain the disparity with the Transaction price. *Id.* ¶ 71. This is not a

---

[4] To review, in 2012, Willamette concluded that the fair market value of 100% of Norco's equity was $138.4 million. Compl. ¶ 18. Yet in 2015, Alerus caused the ESOP to pay more than $140 million for just a 35% equity interest in the company. *Id.* ¶ 3. The Transaction price reflected a 250% increase from Willamette's valuation a few years earlier. *Id.* ¶ 56. Norco's revenues increased just 29% over the intervening years. *Id.* ¶ 57.

8

question of technical valuation methodologies comprehensible only to valuation professionals. Kissler demonstrated that he considered the 2012 Willamette Valuation credible by using it for a prior transfer of shares, *id.* ¶¶ 17–18, and he was personally familiar with Norco's financial performance since then, *id.* ¶ 69. These allegations support the inference that Kissler knew of a potential problem with the Transaction price. *See Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-SHK, 2021 WL 162643, at *5 (C.D. Cal. Jan. 15, 2021) (allegation that selling shareholder knew of lower stock price in previous years and, as CEO, would have known about company's subsequent performance "lead to a plausible inference" that he knew he was receiving more than fair market value for his stock).

Lastly, the Court overlooked numerous additional allegations in the Complaint in rejecting the remaining grounds for inferring Kissler's knowledge of Alerus's breaches. The Court wrote that it "would need more facts supporting a reasonable inference that Kissler had knowledge of fiduciary breaches by Alerus" beyond "[h]is involvement in Norco leadership." Order at 12. The Complaint contains precisely that; it does not baldly allege that Kissler is liable merely by dint of his position. To start, the Complaint alleges that Kissler "was closely involved in formulating and carrying out the ESOP Transaction," Compl. ¶ 72; for example, he "actively participated in a November 9, 2015, meeting during which he, other Norco management, and Ambrose presented a summary of the proposed transaction and Company financial information to Alerus and Chartwell." *Id.* ¶ 73. The Complaint further details the role of his representative, Ambrose, which "dictated the structure, financing, and timeline of the transaction; provided valuation estimates to Alerus and its advisors; and represented the Sellers in negotiations with Alerus." *Id.* ¶ 74. It is through this involvement in putting the Transaction together, both directly and through Ambrose, that Kissler knew or should have known of Alerus's flawed investigation

9

and negotiation and the resulting overpayment, not merely through his role as Norco's CEO or Chairman.

What's more, the Complaint spells out various indicators <u>within Kissler's knowledge</u> of a compromised process and negotiations, such as the use of non-GAAP financials contrary to typical practice; a lack of independence by Alerus and Chartwell; and admissions that Chartwell's work product was based on incomplete information. *Id.* ¶¶ 76–77. As to overpayment, the Complaint alleges that Kissler knew his own advisor valued the ESOP's interest below the Transaction price, *id.* ¶ 78; was closely familiar with Norco's finances and operations, *id.* ¶ 69; developed and approved Norco's financial projections, *id.* ¶ 70; and knew that the Transaction price caused the ESOP to overpay for its shares, *id.* ¶ 68. Taken together, along with the allegations of knowledge of an abbreviated timeline dictated by Kissler's interests and a prior valuation indicating a substantially lower current value of Norco, these allegations are more than sufficient "to draw the reasonable inference" that Kissler knew or should have known that Alerus was breaching its fiduciary duties and causing the ESOP to enter into a prohibited transaction. *See Iqbal*, 556 U.S. at 678. Accordingly, the Complaint states claims against Kissler for failing to monitor Alerus and co-fiduciary and knowing participant liability.

## CONCLUSION

The Secretary respectfully requests that the Court reconsider the portion of its November 4, 2024 Order dismissing Counts III–V and enter an order denying Kissler's Motion to Dismiss.

10

Dated: December 4, 2024              Respectfully Submitted,


                                     SEEMA NANDA
                                     Solicitor of Labor

                                     WAYNE R. BERRY
                                     Associate Solicitor
                                     Plan Benefits Security Division

                                     JEFFREY M. HAHN
                                     Counsel for Appellate and Special Litigation
                                     Plan Benefits Security Division

                                     /s/Alyssa C. George
                                     ALYSSA C. GEORGE
                                     Senior Trial Attorney

                                     DANA M. FLORKOWSKI
                                     RACHEL A. UEMOTO
                                     Trial Attorneys
                                     Office of the Solicitor
                                     Plan Benefits Security Division
                                     U.S. Department of Labor
                                     P.O. Box 1914
                                     Washington, DC  20013
                                     Tel: (202) 693-5600
                                     Fax: (202) 693-5610

                                     George.Alyssa.C@dol.gov
                                     Florkowski.Dana.M@dol.gov
                                     Uemoto.Rachel@dol.gov

                                     Attorneys for Plaintiff

**Certificate of Service**

I hereby certify that on December 4, 2024, a true and correct copy of the foregoing

*Plaintiff's Memorandum in Support of Her Motion for Reconsideration* was served upon counsel

of record of all parties via the Court's ECF system.

/s/Alyssa C. George
ALYSSA C. GEORGE
Senior Trial Attorney

12